IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

R.S.,[1]

                Plaintiff,

v.                                                                  Case No. 21-1249-JWB

COMMISSIONER OF SOCIAL SECURITY,
*Kilolo Kijakazi, Acting Commissioner*,

                Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits and supplemental security income. Plaintiff and the Commissioner have each filed a brief. (Doc. 11, 17.) The time allowed for further briefing has expired and the matter is accordingly ripe for decision. For the reasons stated herein, the decision of the Commissioner is AFFIRMED.

**I.    Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, and is satisfied by such evidence as a

---

[1] Plaintiff's initials are used to protect privacy interests.

reasonable mind might accept as adequate to support the conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). "Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the [Commissioner's] conclusions are rational." *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(iv), 20 C.F.R. § 416.945. The RFC represents the most that the claimant can still do in a work setting despite her impairments. *See Cooksey v. Colvin*, 605 F. App'x 735, 738 (10th Cir. 2015). The RFC assessment is used to evaluate the claim at both step four and step five. §

416.920(e), (f), (g).  At step four, the agency must determine whether the claimant can perform previous work.  If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.  *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis.  *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  *Thompson*, 987 F.2d at 1487 (citations omitted).

**II.     Background and Procedural History**

Plaintiff protectively filed[2] applications for Title II disability insurance benefits and Title XVI supplemental security income on September 30, 2019, alleging a disability onset date of June 26, 2019.  The claims were denied administratively both initially and upon reconsideration.  Plaintiff subsequently requested an evidentiary hearing before an administrative law judge (ALJ).  (*See* Tr. at 141–42.[3])

On February 24, 2021, ALJ Michael Schilling held a telephonic hearing and heard testimony from Plaintiff and vocational expert Denise Waddell.  Plaintiff testified that she was born on January 28, 1961, making her 58 years old at the time of her disability onset date.  (Tr. at 38.)  Plaintiff testified, among other things, that she had a high school education; that she

---

[2] The protective filing date is the date an individual contacts the Social Security Administration with the stated intention of filing for disability benefits.  In some circumstances it will be considered the application filing date even if it precedes the Administration's receipt of a signed application.  *See* 20 C.F.R. § 416.340; 20 C.F.R. § 416.345.
[3] Citations to "Tr." refer to the Bates' numbering in the administrative transcript. (Doc. 10.)

sometimes could not drive because of her pain; that she had not worked since June 2019; that her previous job as a patient registration representative involved pulling around a machine on wheels weighing about 100 pounds but she could no longer do so because of the pain; that she had pain in her shoulders, fingers, and knees; that she could only stand for 15-20 minutes; that she could not lift a gallon of milk but could lift a half-gallon of milk with two hands; that she experiences depression because of the pain; that she was taking medication for her pain, high blood pressure, and depression but had not been able to see a psychiatrist because of the backlog of patients due to COVID-19; that she had difficulty remembering and concentrating on things because of the pain and depression; and that she was able to leave the house to go to church but did not do anything else outside of the house. (*Id.* at 38–50.)

The ALJ denied Plaintiff's application on March 23, 2021. (*Id.* at 24.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, June 26, 2019. (*Id.* at 18.) At step two, the ALJ found Plaintiff suffers from the following severe impairments: "degenerative disc disease of the cervical spine, degenerative joint disease of the bilateral shoulders, tri-compartmental osteoarthritis of the left knee, and obesity." (*Id.* at 18.) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled any of the presumptively disabling impairments listed in the regulations. (*Id.* at 20.)

The ALJ determined that Plaintiff has the RFC to lift 20 pounds occasionally and 10 pounds frequently; can walk or stand for six out of eight hours in a work day; can sit for six out of eight hours in a work day; can occasionally climb stairs, but never ropes, ladders, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; can occasionally balance; can occasionally push and

pull; can occasionally reach overhead; and should avoid unprotected heights and hazardous moving machinery. (*Id.* at 20.)

At step four, the ALJ determined Plaintiff was able to perform past relevant work, including work as a leasing agent, receptionist, and office manager. (*Id.* at 22–23.) The ALJ also determined, based in part on the testimony of the vocational expert, that Plaintiff was able to perform her past work as a hospital admitting clerk as it is generally performed, but not as Plaintiff performed it. (*Id.* at 23.) Accordingly, the ALJ concluded that Plaintiff was not under a disability within the meaning of the Social Security Act.

## III.  Analysis

Plaintiff argues there is not substantial evidence to support the ALJ's conclusions about Plaintiff's mental impairments at step two and within the RFC assessment. (Doc. 11.) Additionally, Plaintiff argues that the ALJ failed to explain his reasoning for not ordering a psychological consultative exam after Plaintiff's counsel requested one during the hearing. (*Id.*) The Commissioner argues that substantial evidence supports the ALJ's conclusions and that the ALJ was not required to order a psychological consultative exam because the ALJ's duty to develop the record is discretionary and only required if he feels he cannot decide on the evidence. (Doc. 17.)

The ALJ discussed Plaintiff's mental health in his decision. (Tr. at 19, 22.) At step two, the ALJ indicated that Plaintiff had been diagnosed with depression and had been treated with medication by her primary care physician. (*Id.* at 19.) The ALJ also noted that "[d]espite her allegedly severe, often debilitating symptoms, [Plaintiff] has not sought formal mental health treatment with a psychiatrist or sought counseling." (*Id.*) Further, records indicated to the ALJ that despite Plaintiff's reports of her symptoms, she had not required any inpatient treatment, and

her social skills in interacting with her providers were appropriate and did not indicate any limitations caused by her depression. (*Id.*) Based on this evidence, the ALJ concluded that Plaintiff's depression caused no more than mild limitations and was non-severe. (*Id.*)

After making this conclusion, the ALJ considered the "paragraph B" criteria found in 20 C.F.R., Part 404, Subpart P, Appendix 1. Based on the record evidence, the ALJ concluded that Plaintiff had "no limitation in understanding, remembering, or applying information; no limitation in interacting with others; no more than mild limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself." (Tr. at 19.)

As to the residual functional capacity assessment, the ALJ did not include any mental limitations in addition to the physical limitations. (*Id.* at 20–22.) The ALJ provided a narrative of Plaintiff's symptoms and compared them to the evidence in the record, including both medical and non-medical evidence. (*Id.*) The discussion of Plaintiff's physical conditions is more robust than the discussion of Plaintiff's mental health. The ALJ noted the findings of state agency psychological consultants Marsha Toll, Psy.D., and Richard Kaspar, Ph.D., that Plaintiff did not have a medically determinable mental impairment. (*Id.* at 22.) The ALJ disagreed with their conclusions because the evidence showed that while Plaintiff's symptoms were not severe, she was suffering from symptoms of depression and had been diagnosed by a reputable source. (*Id.*) At this stage, the ALJ did not discuss any mental limitations that were appropriate for Plaintiff given her mental condition.

### A. Step Two Findings

This analysis begins by determining whether substantial evidence supports the ALJ's findings about Plaintiff's mental impairments at step two. Notably, the ALJ spent an entire page discussing the evidence as it pertained to Plaintiff's mental condition. (Tr. at 19.) The ALJ

6

considered Plaintiff's testimony about her mental health and symptoms in addition to her medical records. (*Id.*)  In comparing Plaintiff's subjective testimony to her medical records, the ALJ found that she was diagnosed with depression, but that she had not sought out counseling or treatment by a psychiatrist and had not been hospitalized inpatient for treatment of her condition. (*Id.*)  The ALJ also noted that Plaintiff consistently was alert, cooperative, and had a normal affect and appropriate eye contact when she was examined. (*Id.*)  Additionally, the ALJ noted that Plaintiff had not had any difficulty with social skills, including waiting in public waiting areas, appropriate behavior with office staff, and building rapport with providers. (*Id.*)

Plaintiff argues that it was inappropriate for the ALJ to consider Plaintiff's failure to obtain other psychiatric treatment or counseling because Plaintiff explained that she did not have insurance. (Doc. 11 at 13.)  Plaintiff points this court to a Social Security Policy Interpretation Ruling related to evaluating symptoms in disability claims. SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017).  In that ruling, the Commissioner indicates that the ALJ may consider that "[a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services." *Id.*  Courts in this district and circuit have "repeatedly held that the inability to pay may justify a claimant's failure to pursue or seek treatment." *Branstetter v. Colvin*, No. 13-CV-1275-DDC, 2014 WL 3700976 *1, *9 (D. Kan. July 25, 2014) (collecting cases).  The court agrees that the ALJ should have considered Plaintiff's lack of insurance and inability to pay for additional treatment when he considered that she had not had counseling or psychiatric treatment other than by her primary physician.  However, the court believes that there is still substantial evidence to support the ALJ's finding at step two that Plaintiff's depression was not severe.  Plaintiff's social skills and affect were appropriate and did not indicate more severe depression.  Plaintiff had been treated with medication for her depression, but had not otherwise needed further care, such as

inpatient treatment. Plaintiff testified about her depression and its severity, and the ALJ took that into account in his analysis, but ultimately, there was no objective evidence to support Plaintiff's testimony about the severity of her symptoms.

### B. The RFC Assessment

Plaintiff argues that the ALJ relied only on his step two analysis and did not adequately address her mental health limitations in the RFC assessment. (Doc. 11 at 13–14.) The Commissioner argues that the ALJ was not obligated "to repeat the same analysis outside the step two context." (Doc. 17 at 10.)

The court agrees with the Commissioner. The ALJ noted at the outset of his discussion about Plaintiff's RFC assessment that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. at 20.) The ALJ went on to discuss the symptoms that Plaintiff testified about and the medical evidence related to those symptoms in detail. (*Id.* at 20–22.) While it is true that the ALJ did not revisit in detail Plaintiff's mental health concerns, he was not required to do so. *See Bales v. Colvin*, 576 Fed. Appx. 792, 798–99 (10th Cir. Aug. 15, 2014) ("Here, the ALJ thoroughly discussed the medical evidence, and there is no indication that, despite not expressly mentioning Ms. Bales' other medical problems, the ALJ did not take them into account."). The ALJ disagreed with the state agency psychological consultants who found that Plaintiff did not have a medically determinable mental impairment. (Tr. at 22.) In that same discussion, the ALJ indicated that "the medical evidence of record does not support the severity and degree of limitation [Plaintiff] alleges." (*Id.*) In sum, the ALJ considered the evidence but did not find that Plaintiff's RFC should include mental limitations.

The court finds that Plaintiff's RFC is supported by substantial evidence.

### C. Psychological Consultative Exam

Plaintiff argues that the ALJ erred in not ordering a psychological consultative exam to further develop the evidence of her mental health condition. (Doc. 11 at 11–12.) The Commissioner argues that the ALJ is only required to order an exam if he feels he cannot decide on the record in front of him. (Doc. 17 at 11–12.)

The ALJ has discretion to purchase a consultative examination if it is necessary "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow" the ALJ to make a determination of disability. 20 C.F.R. § 404.1519a(b). The ALJ considered the medical evidence from Plaintiff's doctor and the evidence from the state agency psychological consultants. (Tr. at 19, 22.) This evidence was sufficient to allow the ALJ to make his determination on Plaintiff's disability claim, and thus, the ALJ was not required to order a psychological consultative exam. And the court believes there was substantial evidence in the record for the ALJ to make his findings, as discussed above.

### IV. Conclusion

For the reasons stated, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED. Dated this 27th day of October 2022.

                                                      \_\_s/ John W. Broomes_____
                                                     JOHN W. BROOMES
                                                     UNITED STATES DISTRICT JUDGE